UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
TERRE HAUTE DIVISION

| | |
|---|---|
| CECIL JENKINS, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | )  No. 2:21-cv-00075-JPH-MG |
| | ) |
| RICHARD BROWN, *et al.*, | ) |
| | ) |
| Defendants. | ) |

**ORDER GRANTING DEFENDANTS' MOTION FOR SUMMARY JUDGMENT AND DIRECTING ENTRY OF FINAL JUDGMENT**

Cecil Jenkins alleges that he was subjected to solitary confinement for over 11 years without due process. The defendants—Indiana Department of Correction (IDOC) officials—seek summary judgment on the affirmative defense that Mr. Jenkins failed to exhaust available administrative remedies.

The undisputed evidence shows that Mr. Jenkins had administrative remedies available to him and failed to exhaust them. Accordingly, the defendants' motion for summary judgment is granted, this action is dismissed without prejudice, and the Court directs the clerk to enter final judgment.

**I.
STANDARD OF REVIEW**

Parties in a civil dispute may move for summary judgment, which is a way of resolving a case short of a trial. *See* Fed. R. Civ. P. 56(a). Summary judgment is appropriate when there is no genuine dispute as to any of the material facts, and the moving party is entitled to judgment as a matter of law. *Id.*; *Pack v. Middlebury Comm. Schs.*, 990 F.3d 1013, 1017 (7th Cir. 2021). A "genuine

dispute" exists when a reasonable factfinder could return a verdict for the nonmoving party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). "Material facts" are those that might affect the outcome of the suit. *Id.*

When reviewing a motion for summary judgment, the Court views the record in the light most favorable to the nonmoving party and draws all reasonable inferences in the nonmoving party's favor. *Khungar v. Access Cmty. Health Network,* 985 F.3d 565, 572-73 (7th Cir. 2021). The Court cannot weigh evidence or make credibility determinations on summary judgment because those tasks are reserved for the fact-finder. *Miller v. Gonzalez,* 761 F.3d 822, 827 (7th Cir. 2014). The Court is only required to consider the materials cited by the parties, *see* Fed. R. Civ. P. 56(c)(3); it is not required to "scour every inch of the record" for evidence that is potentially relevant. *Grant v. Trustees of Indiana Univ.*, 870 F.3d 562, 573-74 (7th Cir. 2017).

"[A] party seeking summary judgment always bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of 'the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any,' which it believes demonstrate the absence of a genuine issue of material fact." *Celotex Corp. v. Catrett,* 477 U.S. 317, 323 (1986). "[T]he burden on the moving party may be discharged by 'showing'—that is, pointing out to the district court—that there is an absence of evidence to support the nonmoving party's case." *Id.* at 325.

## II.
## APPLICABLE LAW

On a motion for summary judgment, "[t]he applicable substantive law will dictate which facts are material." *National Soffit & Escutcheons, Inc., v. Superior Sys., Inc.,* 98 F.3d 262, 265 (7th Cir. 1996) (citing *Anderson,* 477 U.S. at 248). In this case, the substantive law is the Prison Litigation Reform Act (PLRA), which requires that a prisoner exhaust available administrative remedies before suing over prison conditions. 42 U.S.C. § 1997e(a). "[T]he PLRA's exhaustion requirement applies to all inmate suits about prison life, whether they involve general circumstances or particular episodes, and whether they allege excessive force or some other wrong." *Porter v. Nussle,* 534 U.S. 516, 532 (2002) (citation omitted).

"To exhaust administrative remedies, a prisoner must comply strictly with the prison's administrative rules by filing grievances and appeals as the rules dictate." *Reid v. Balota,* 962 F.3d 325, 329 (7th Cir. 2020) (citing *Woodford v. Ngo,* 548 U.S. 81, 90-91 (2006)). A "prisoner must submit inmate complaints and appeals 'in the place, and at the time, the prison's administrative rules require.'" *Dale v. Lappin,* 376 F.3d 652, 655 (7th Cir. 2004) (quoting *Pozo v. McCaughtry,* 286 F.3d 1022, 1025 (7th Cir. 2002)).

## III.
## BACKGROUND

The facts are undisputed. Because the defendants have moved for summary judgment under Rule 56(a), the Court views and recites the evidence "in the light most favorable to the non-moving party and draw[s] all reasonable

3

inferences in that party's favor." *Zerante v. DeLuca*, 555 F.3d 582, 584 (7th Cir. 2009) (citation omitted).

Mr. Jenkins was assigned to Restrictive Status Housing at the Indiana State Prison from July 21, 2005, until November 2007, when he was moved to Department Wide Administrative Restrictive Status Housing (DWARSH) at Wabash Valley Correctional Facility. Dkt. 34-9 at 2; dkt. 34-10. Mr. Jenkins was transferred out of DWARSH in March 2019. Dkt. 37 at 1–2.

### A.   Classification Review Documents

While housed in DWARSH at Wabash Valley between November 2007 and March 2019, Mr. Jenkins regularly received reviews of his classification. These reviews are memorialized on 33 Reports of Classification Hearing (ROCHs) and 101 Administrative Segregation Reviews (ASRs).[1] Dkt. 34-11. A ROCH consists of handwritten notes on a preprinted IDOC form with four main sections. *See, e.g.*, dkt. 34-10 at 1. If the hearing was prompted by the inmate's request to be reclassified, he writes that request in the first section. *See, e.g.*, dkt. 34-11 at 13. Regardless of what prompted the hearing, a member of the classification committee handwrites its recommendation in the next section. The supervisor of classification then indicates either approval or denial of the committee's recommendation in a section labeled, "Supervisor of Classification: Decision and

---

[1] The latter category of documents has had various titles over the years, including Long-term Administrative Segregation Review, Facility Administrative Segregation Review, Facility Administrative Restrictive Status Housing Review, Facility Restrictive Status Housing Review, Department Administrative Restrictive Status Housing Review, and Department-Wide Administrative Restrictive Status Housing Review. They are substantially identical to one another regardless of title. The Court refers to each of these documents as an Administrative Segregation Review (ASR) for simplicity.

4

Basis." The ultimate classification action taken is written in the final section, and the supervisor of classification signs the form.

An ASR is typewritten and issued under the names of casework managers in the units where the inmate was confined. Most months, nothing on Mr. Jenkins' ASRs changed from the previous month except the date and perhaps the name of the casework manager completing the review. Most say something very similar to the following:

> Per order of the Executive Director of Operations, Offender Jenkins, Cecil, DOC # 853489, is currently assigned to the Secure Confinement Unit at the Wabash Valley Correctional Facility.
>
> Your status has been reviewed and there are no changes recommended to the Executive Director of Operations at this time. Your current department Administrative Restrictive Housing Status shall remain in effect unless otherwise rescinded by the Executive Director of Operations.
>
> This review was prepared by T. Mark, CWM, Secure Confinement Unit. If there are any questions regarding this report, they may be directed to either the Unit Caseworker or the Casework Manager.

Dkt. 34-11 at 79.

The last two ASRs Mr. Jenkins received—dated February 1, 2019, and March [no date] 2019—were slightly different because they each included the following additional language:

> Placement on Department-Wide Administrative Status Housing may be appealed by submitting a Classification Appeal (SF 9260) within ten working days of admission to a Department-Wide Restrictive Status Housing Unit or any subsequent Classification action (i.e. 30 Day or 90 Day reviews).

Dkt. 34-11 at 133–134.

    **B.    Classification Appeals**

While Mr. Jenkins was confined in administrative segregation, the IDOC had a classification policy with an appeal process.[2] Under the classification policy, the appeal process became available once an inmate received a "classification decision from the Supervisor of Classification" or, in the case of an interfacility decision, the inmate was "informed of the Classification Analyst's decision by the Supervisor of Classification." Dkt. 34-17 at 10–11. In either case, the inmate could appeal the decision in writing on State Form 9260 within ten working days of receiving the decision. *Id.*

The defendants have designated evidence that inmates learn about the classification appeals process during orientation and that the process and the necessary forms are available to all inmates, including those in administrative segregation. Dkt. 34-1 at ¶¶ 22–24.

Mr. Jenkins does not dispute that IDOC had a classification policy with an appeals process. He does not claim that he did not know about the policy or that the process was unavailable to him at any time.

During his approximately 11 years in administrative segregation, Mr. Jenkins submitted one classification appeal, dated February 14, 2019. Dkt. 34-23 at 2.

---

[2] The IDOC went through six different versions of its classification policy while Mr. Jenkins was designated to solitary confinement. *See* dkts. 34-12, 34-13, 34-14, 34-15, 34-16, 34-17. The differences among these versions of the policy are immaterial to the defendants' motion for summary judgment and each version included a similar appeal process, so the Court cites the most recent version for simplicity.

This classification appeal related to two ROCHs that Mr. Jenkins had received in January 2019. The first determined that he would remain in administrative segregation "pending status review." Dkt. 34-11 at 131 (January 9, 2019). The second stated that he would be discharged from administrative segregation and transferred to New Castle Correctional Facility (NCCF) "for adjustment." *Id.* at 132 (January 23, 2019). The supervisor of classification noted "transfer submitted" in the "Action taken" portion of the form. *Id.*

Mr. Jenkins then received an ASR dated February 1, 2019, informing him that he would stay in administrative segregation:

> Your status has been reviewed and there are no changes recommended to the Executive Director of Operations at this time. The items reviewed include: reason for current placement, conduct history, Program participation, OCMS notes, interactions with staff and other offenders. Your current Department-Wide Administrative Restrictive Housing Status shall remain in effect unless otherwise rescinded by the Executive Director of Operations.

Dkt. 34-11 at 133.

It also informed him that he could appeal the determination:

> Placement on Department-Wide Administrative Status Housing may be appealed by submitting a Classification Appeal (SF 9260) within ten working days of admission to a Department-Wide Restrictive Status Housing Unit or any subsequent Classification action (i.e. 30 Day or 90 Day reviews).

Dkt. 34-11 at 133–134.

He later received an identical ASR dated March 1. *Id.* at 134.

On February 14, 2019, Mr. Jenkins submitted a classification appeal challenging the decisions—reported in the January ROCHs—that he would

7

remain in segregation and then be transferred to NCCF once he was released from segregation. Dkt. 34-23 at 2.³  On the appeal form, Mr. Jenkins wrote:

> [The decision was:] That I remain on DWAS, also that upon my release I have to go thru a step-down program at New Castle or here at WVCF.
> [I base my appeal on the following reasons:] That I have been on the SCU for over 10 yrs and that my due process has continually been violated with cut and paste reviews. Over 10 years of isolation in a one man cell. I'm serving a 270 yr sentence.

*Id.*

K. Staton of the Classification Division returned Mr. Jenkins' appeal on April 16, 2019, with a letter stating that he had been recommended for discharge from segregation on February 20 and then transferred to NCCF on March 8. *Id.* at 1.

Mr. Jenkins filed this case on February 2, 2021. Dkt. 1. He pled viable claims that his conditions of confinement in administrative segregation violated the Eighth Amendment, but now concedes that he failed to exhaust administrative remedies as to those claims. Dkt. 10 at 3; dkt. 36 at ¶ 6.

He also pled a viable claim that his Fourteenth Amendment due process rights were violated because he did not receive meaningful periodic reviews of his placement in administrative segregation between 2007 and 2019. This claim is the subject of the defendants' motion for summary judgment.

---

³ Although closer in time to the February 1 ASR (dkt. 34-11 at 133), Mr. Jenkins' appeal refers specifically to the contents of the January 9 and 23 ROCHs (*id.* at 131–32). *Compare* dkt. 34-23 at 2 (discussing "remain[ing] on DWAS" and "step-down program at New Castle") *to* dkt. 34-11 at 131 ("Remain DWRH-A pending status review"), 132 ("rec transfer to NCNTU for adjustment").

8

## IV.
## ANALYSIS

"Because exhaustion is an affirmative defense," the defendants face the burden of establishing that "an administrative remedy was available and that [Mr. Jenkins] failed to pursue it." *Thomas v. Reese*, 787 F.3d 845, 847 (7th Cir. 2015). "[T]he ordinary meaning of the word 'available' is 'capable of use for the accomplishment of a purpose,' and that which 'is accessible or may be obtained.'" *Ross v. Blake,* 578 U.S. 632, 642 (2016) (internal quotation omitted). "[A]n inmate is required to exhaust those, but only those, grievance procedures that are capable of use to obtain some relief for the action complained of." *Id.* (internal quotation omitted). The IDOC's classification appeal procedure provides administrative remedies for inmates confined in long-term administrative segregation. *Crouch v. Brown*, 27 F.4th 1315 (7th Cir. 2022). Both ROCHs and ASRs are appealable. *Id.* at 1322 ("Crouch could have appealed any one of the 35 ROCHs he received. . . . Crouch also could have appealed one of the twenty-one 30-day reviews he received.").

Here, Mr. Jenkins does not dispute that he received each of the 33 ROCHs and 101 ASRs that were issued to him between November 2007 and March 2019, or that each was appealable. He does not allege was that the appeals process was unavailable to him at any time over the 11-year timeframe. Instead, Mr. Jenkins argues that by filing the classification appeal on February 14, 2019, he exhausted available administrative remedies with respect to his claim that Defendants violated his Due Process rights by keeping him in solitary

9

confinement for over 11 years without periodic meaningful review of his placement. In other words, Mr. Jenkins argues that by filing one classification appeal while still housed in solitary confinement, he preserved the ability to bring Due Process claims based on the entire 11-year period that he was held in solitary confinement. Dkt. 37 at 5 ("The number of appealable events is inconsequential so long as the inmate submits an appeal to challenge his classification pursuant to the rules promulgated by the agency in which he is housed.").

An inmate "must submit . . . complaints and appeals 'in the place, and at the time, the prison's administrative rules require.'" *Dale,* 376 F.3d at 655 (quoting *Pozo,* 286 F.3d at 1025). Strict compliance with exhaustion rules is required. *Crouch,* 27 F.4th at 1320. Wabash Valley's rules required Mr. Jenkins to submit classification appeals within 10 days of each classification decision. It's undisputed that he did not submit classification appeals according to that timeline for at least the first eleven years and two months he was in administrative segregation.

Mr. Jenkins argues that the number of appealable events is irrelevant to the exhaustion analysis so long as he can show he exhausted remedies as to one event in the series. It is true that "prisoners need not file multiple, successive grievances raising the same issue . . . if the objectionable condition is continuing." *Turley v. Rednour,* 729 F.3d 645, 650 (7th Cir. 2013). Under that rule, a prisoner has satisfied the exhaustion requirement "once a prison has received notice of, and an opportunity to correct, a problem." *Id.* Having put the

10

prison on notice of the alleged problem, the prisoner need not *continue* to file grievances on the same issue.

But neither *Turley* nor any other authority the Court is aware of holds that the filing of a grievance applies retroactively to previously expired claims that were not timely grieved. Here, Wabash Valley's policy required classification appeals to be filed within 10 days of the classification decision. Mr. Jenkins does not contend that the appeals process was unavailable to him any point while he was in solitary confinement between November 2007 and March 2019. He has not shown that the filing of an appeal in February 2019 satisfies the requirement of filing an appeal to a classification decision within 10 days of the decision for any ROCH or ASR other than those he received in January 2019.

Mr. Jenkins argues that *Crouch* does not foreclose his claim because there the plaintiff there did not file *any* classification appeal. But that misses the point. Crouch was confined to solitary confinement for four years and during that time received at least 56 classification reports. Mr. Crouch did not argue that administrative remedies were unavailable to him, yet he did not appeal any of the ROCHs or ASRs.

Like Mr. Crouch, Mr. Jenkins had an appeal procedure available to him but did not use it until February 14, 2019. At best, therefore, Mr. Jenkins has properly exhausted claims regarding his confinement in administrative segregation from January 9, 2019[4]—when he received the first of two decisions

---

[4] It appears that Mr. Jenkins' appeal, which he dated February 14, 2019, was beyond the ten-working day deadline to appeal ROCHs dated January 9 and 23. But "a procedural shortcoming like failing to follow the prison's time deadlines amounts to a

11

that he challenged in his classification appeal—until his release from administrative segregation three months later. But this is too short a term to support a Fourteenth Amendment claim, regardless of what process the defendants offered Mr. Jenkins. *See Marion v. Columbia Correction Inst.*, 559 F.3d 693, 697–98 (7th Cir. 2009) ("[S]ix months of segregation is 'not such an extreme term' and, standing alone, would not trigger due process rights.") (quoting *Whitford v. Boglino*, 63 F.3d 527, 533 (7th Cir. 1995)). Therefore, Mr. Jenkins does not have a viable due process claim based on his February 14, 2019, classification appeal.

Finally, the Court noted in Part III(B) above that Mr. Jenkins' February 1, 2019 ASR was the first ASR to explicitly notify Mr. Jenkins of his ability to appeal. Mr. Jenkins does not contend that this change to the ASR forms shows that the classification appeal process was unavailable before February 1, 2019. Rather, Mr. Jenkins argues exclusively that he exhausted the classification appeal process—not that the process was unavailable to him. *See* dkt. 37 at 3–6. And, in any event, such an argument appears to be contrary to *Crouch*. *See* 27 F.4th at 1322 ("Crouch could have appealed any one of the 35 ROCHs he received. . . . Crouch also could have appealed one of the twenty-one 30-day reviews he received. At least six of these reviews contained new language explaining how inmates could appeal the reviews . . . . Regardless, at any point

---

failure to exhaust only if prison administrators explicitly relied on that shortcoming." *Conyers v. Abitz*, 416 F.3d 580, 585 (7th Cir. 2005). The prison staff did not reject Mr. Jenkins' appeal as untimely. *See* dkt. 34-23 at 1. Accordingly, it was sufficient to exhaust the appeal process as to the January ROCHs.

Crouch could have attached relevant copies of his 30-day reviews to a ROCH to support his claims. This, too, is a sufficient basis on which to determine that Crouch failed to exhaust his administrative remedies under the PLRA.").

## V.
## Conclusion

The defendants' motion for summary judgment, dkt. [34], is **granted**. Mr. Jenkins' motion in response, dkt. [36], is **denied** to the extent it seeks to move forward with Fourteenth Amendment claims.

This action is **dismissed without prejudice**. *See Ford v. Johnson*, 362 F.3d 395, 401 ("[I]f the prisoner does exhaust, but files suit early, then dismissal of the premature action may be followed by a new suit that unquestionably post-dates the administrative decision. . . . [T]herefore . . . *all* dismissals under § 1997e(a) should be without prejudice.") (emphasis in original). The **clerk is directed** to enter final judgment.

**SO ORDERED.**

Date: 2/14/2023

Distribution:

Brandyn Lee Arnold
INDIANA ATTORNEY GENERAL
brandyn.arnold@atg.in.gov

Jeffrey R. Cardella
LAW OFFICE OF JEFF CARDELLA LLC
jeffcardella@cardellalawoffice.com

Kyle L. Christie
CHRISTIE FARRELL LEE & BELL, P.C.
kyle@cflblaw.com

*James Patrick Hanlon*
James Patrick Hanlon
United States District Judge
Southern District of Indiana